IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KM PROCESSING SOLUTIONS, LLC, <br> E RECYCLING SYSTEMS, LLC, <br> <br> Plaintiffs, <br> <br> v. <br> <br> BUNTING MAGNETICS CO., <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION NO. 1:13-00366-CG-N |

REPORT AND RECOMMENDATION

This action is before the Court on a motion (doc. 14) filed by Bunting Magnetic Co. ("Bunting"), the defendant herein, to dismiss plaintiffs' Amended Complaint (doc. 8) for improper venue. The matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 (b)(1)(B). Upon consideration of the motion, plaintiffs' response in opposition thereto (doc. 18), Bunting's reply (doc. 19), and all other pertinent portions of the record, it is recommended that the motion be **denied**.

I. Factual and Procedural Background

The plaintiffs, KM Processing Solutions, LLC ("KMP") and E Recycling Systems, LLC ("ERS"), are Alabama limited liability companies in the business of developing and supplying recycling and processing systems to various purchasers. ERS is a successor and/or assignee of Ecovery, LLC. KMP and ERS maintained offices in Loxley, Alabama during 2010 and 2011. (Doc. 18-1 at ¶ 2).

Defendant Bunting Magnetics Co. ("Bunting") is a Kansas corporation and vendor

dealing with magnets and related component parts. This lawsuit concerns, in part, the sale of magnetic discs by Bunting to KMP and ERS. It also concerns Bunting's alleged breach of a confidentiality agreement entered into by the parties.

Bunting's regional sales manager, Ken Oakley, made an initial sales call to Ecovery (ERS) by visiting James Cunningham, organizer and manager of ERS, in Loxley, Alabama, in September of 2010. (Doc. 18-1 at ¶¶ 3-4). Following Mr. Oakley's visit, Bunting's vice-president of engineering, Don Suderman, visited Mr. Cunningham at ERS. (*Id*. at ¶ 4). On December 21, 2010, Bunting sent ERS a price proposal quote for a component part (magnetic head pulley). (*Id*., *citing* Doc. 14 at 8). This proposal, which was unsigned by either party, states:

> "TERMS: Under $40,000. Net 30 days. $40,000 or more, 40% with order, 60% Net 30 days. With approved credit.
> . . .
>
> Refer to www.buntingmagnetics.com for Terms and Conditions of Sale and Product Warranty."

(Doc. 14 at 8). The undersigned has searched Bunting's website and found, under the subtitle "Terms and Conditions of Sale," the following statement:

> GOVERNING LAW/SUBMISSION TO JURISDICTION
> Any contract arising out of the making and acceptance of a Bunting offer or quote shall be deemed to have been made in the State of Kansas, and shall be construed according to the laws of the State of Kansas. The Buyer stipulates that any resultant agreement is substantially performable by the parties and that jurisdiction exists solely within the state of Kansas.

(www.buntingmagnetics.com). Bunting's website also contains the following statement in its "Terms and Conditions of Sale":

> ENTIRE AGREEMENT
> The Buyer's purchase order, upon acknowledgment by Bunting, Bunting's Terms and Conditions of Sale, and the Bunting Product Warranty represent the entire agreement between Bunting and the Buyer.

(*Id*.). *See also*, Doc. 14 at 16, 24.

However, Bunting has not disputed ERS's contention that it planned to use Bunting's magnetic head pulley for a design concept it was developing known as a "high gauss magnet" but would not divulge this design concept to Bunting until after a confidentiality agreement could be reached. (Doc. 18-1 at ¶ 5). The parties' contractual relationship was, therefore, predicated in part on this confidentiality agreement. Bunting and ERS entered into a "Confidentiality and Use Agreement" (the "Confidentiality Agreement") with an effective date of January 14, 2011, which was signed by Mr. Suderman on behalf of Bunting. (Doc. 18 at 3, *citing* Doc. 8-1). Bunting agreed therein, *inter alia*, to protect and refrain from the usage of ERS's confidential information.[1] (Doc. 8-1 at Section 3). The Confidentiality Agreement does not contain a forum selection clause and, under Section 8, the parties selected the substantive law of the State of Alabama as governing the Confidentiality Agreement. (Doc. 18 at 3; Doc. 8-1 at Section 8; Doc. 18-1 at ¶ 7). Under Section 10, the parties

---

[1] Under the Confidentiality Agreement, "Confidential Information" is defined as "information relating to the Business, including, without limitation, any technical information, drawings, renderings, plans, sketches, designs, prototypes, illustrations, information relating to Ecovery's present and future business operations, business plans, proposals, pricing information, rade secrets, trademarks, copyrights, patents, marketing information, sales techniques, confidential records, legal affairs, business projections, VENDOR and supplier data, and strategies or financial information related to Ecovery, whether such information is written or oral, and whether such information may be in electronic or digital format, and which is furnished to VENDOR or to which VENDOR is given access." (Doc. 8-1 at Section 1).

agreed that the Confidentiality Agreement is a fully integrated document superseding any prior agreements. (Doc. 8-1 at Section 10).

Following and pursuant to the Confidentiality Agreement, Mr. Cunningham communicated ERS's internal plans and development concept to Bunting in order for Bunting to build ERS's "high gauss magnet." (Doc. 18-1 at ¶¶ 5-6). On February 4, 2011, ERS purchased the magnetic head pulley from Bunting[2] and Bunting ultimately built ERS's "high gauss Magnet" which incorporated Bunting's magnetic head pulley into the design concept. (*Id*. at ¶¶ 5-6). In its Amended Complaint, ERS asserts that Bunting is now "marketing a 'High-Intensity Separation Conveyor Line,' designed by Ecovery (ERS), which Bunting obtained solely through the improper usurpation and usage of Confidential Information in violation of the Confidentiality Agreement." Doc. 8 at ¶ 48).

On January 11, 2011, Bunting "sent a credit application via email to James Cunningham as managing partner of Ecovery, LLC." (Doc. 14 at 10, ¶ 4). Bunting

---

[2] The evidence of record includes a Purchase Order on an ERS form which is dated January 10, 2011, and indicates ERS's request to purchase three (3) items from Bunting identified as E-GHP1230 (NEO HIGH INTENSITY MAGNETIC HEAD PULLY 12" X 30") at a cost of $18,345.00 each or $55,035.00. (Doc. 14 at 9). On this form, Bunting (as evidenced by the phone number provided) has applied a stamped form containing hand-written information, which includes a change of unit price from the typed "18,345.00" to the hand-written "17427.75" and an estimated "Ship Date" of February 24, 2011, as well as "Terms" for payment "CIA 40% - Balance Net 30 Days." (*Id.*) Bunting's stamped form contains no reference to any other terms or conditions related to ERS's Purchase Order. Bunting's Invoices, which bear no signature, indicate that the "FREIGHT" for the shipment was prepaid and include the following statement:

> All Orders are subject to Bunting Magnetics Co. Standard Terms and Conditions which are available upon request. These Terms and Conditions shall prevail.

(Doc. 14 at 26; Docs. 18-3, 18-4, 18-5, 18-6, 18-8, 18-9, 18-10).

contends that it included in this email "a copy of Bunting's Terms and Conditions." (*Id*. at ¶ 4, *citing* Exhibit C-1 (Doc. 14 at 12-16)). Bunting similarly contends that it "sent an email to James Cunningham in his capacity as principle of KM Processing Solutions, LLC on August 16, 2011, including a credit application for KM Processing Solutions, LLC and another copy of the terms and conditions," (*Id.* at ¶ 6, *citing* Exhibit C-3 (Doc. 14 at 19-24)). Mr. Cunningham disputes Bunting's contention. *See*, Doc. 18-1 at ¶ 8 ("[C]ontrary to the Declaration of Stephanie Gibbons . . ., at no time did Ms. Gibbons, or anyone acting on Bunting's behalf, forward me a copy of 'Bunting's Terms and Conditions' . . ."); at ¶ 13 ("To the contrary, as the attachment bar on this email confirms, Ms. Gibbons sent the following items: a credit application form; W-9 tax form; wiring information for bill payment and vendor information sheet. Neither the e-mail not the attachments thereto included or referenced and 'Terms and Conditions' of purchase or sale.").

The Credit Application forms which were sent by Bunting to Mr. Cunningham in his official capacity with ERS and KM first advises the applicant that, "[f]or a copy of our terms and conditions, please visit our website at www.buntingmagnetics.com." (Doc. 14 at 12). After the section seeking "CUSTOMER CREDIT INFORMATION" and before the signature section of the form, the applicant is advised of the following, in pertinent part:

> This is a request for the extension of credit terms with Bunting Magnetics and by completing this form the above referenced Buyer agrees to the terms & conditions as expressed in this form and future documents from Bunting Magnetics Co. Complete terms and conditions may be found at

>       www.buntingmagnetics.com.    . . .    Applicant agrees to pay all legal fees and
>       ***collections cost should such action be required regarding this account*** with
>       Bunting and venue to be within and according to Kansas law.

(Doc. 14 at 13; Doc. 18-2 at 1)(emphasis added).

In March 2011, plaintiffs began purchasing from Bunting the 22 magnetic discs that plaintiffs allege are defective. (Doc.18-1 at ¶¶ 9-12, *citing* Docs. 18-3 to 18-6, 18-8 to 18-10). Beginning in March 2011, ERS purchased from Bunting, for the sum of $82,501.00, a total of ten (10) magnetic discs with a 90 Neodynium magnet configuration and two (2) magnetic discs with a 60 Neodynium magnet configuration and paid Bunting a total of. (Docs. 18-3 to 18-6). For each transaction, ERS paid 40% of the purchase price up-front and the balance upon delivery. (*Id*.). Beginning in September, 2011, KMP purchased from Bunting, for the sum of $100,895.00, a total of ten (10) magnetic discs with a 60 Neodynium magnet configuration. (Doc.18-1 at ¶¶ 14-16, *citing* Docs. 18-8 to 18-10). For each of these transactions, KMP paid 40% of the purchase price up-front and the balance upon delivery. (*Id*.).

Plaintiffs filed this action in the Circuit Court of Baldwin County, Alabama, on June 17, 2013, and Bunting removed the action to this Court on July 18, 2013. (Doc. 1 at ¶ 1). Bunting's first motion to dismiss for improper venue (doc. 4) was denied as moot (doc. 10) in light of the filing of plaintiffs' Amended Complaint (doc. 8) on August 5, 2013. Bunting filed the present motion (doc. 14) to dismiss plaintiffs' Amended Complaint on August 21, 2013. The issues have been briefed and are ripe for disposition.

II. Analysis.

A. Bunting's Motion to Dismiss is due to be Denied.

Bunting moves to dismiss plaintiffs' Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(3) on the grounds, in sum, that venue is improper because plaintiffs agreed to be bound by a forum selection clause which specified that "venue [would] be within and according to Kansas law." (Doc. 14 at p. 1 and ¶6). "Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law, under 28 U.S.C. § 1404(a) (1982)." P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003), *citing* Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 28-29 (1988). "The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general." *Id., citing* In re Ricoh Corp., 870 F.2d 570, 573-74 (11th Cir. 1989) (considering whether the clause was "freely and fairly negotiated by experienced business professionals" and whether there was any fraud, duress, misrepresentation, or other misconduct in connection with the agreement to the forum selection clause).

Even if the forum selection clause in this case were to be found to be enforceable, Bunting's motion to dismiss is due to be denied because a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) is only appropriate where the forum-selection clause at issue specifies an international forum to which a case cannot be

7

transferred under the federal statutory provisions governing transfer of venue from one United States jurisdiction to another. The Eleventh Circuit first drew this distinction in Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir.1998), when it held:

> Unlike in Stewart, however, the federal statutory provisions governing transfer of venue from one United States District Court to another, see 28 U.S.C. § 1404(a) (providing that district court "may transfer any civil action to any other district or division where it might have been brought") (emphasis added); 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.")[], do not apply in cases that involve a forum-selection clause that requires litigation in another country.

148 F.3d at 1290, n.3. The Eleventh Circuit has also declined to adopt the First Circuit's holding in Lambert v. Kysar, 983 F.2d 1110, 1112-13 (1st Cir. 1993), that a valid forum-selection clause can cause venue to be improper under federal venue statutes. Hollis v. FSU, 259 F.3d 1295, 1300 n. 5 (11th Cir.2001). In Hollis, the Eleventh Circuit held:

> We also have no reason to discuss the First Circuit's conclusion in Lambert, 983 F.2d at 1112-13, that a district court can dismiss an action that has been properly removed on diversity grounds if the parties' contract contains a valid forum selection clause requiring litigation to be instituted in a particular state court. *Cf.* Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ("[F]ederal law, specifically 28 U.S.C. § 1404(a), governs the district court's decision whether to give effect to the parties' forum selection clause and transfer this case to a court in Manhattan."); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir.1998) ( "[M]otions to dismiss upon the basis of choice-of-forum and choice-of-law clauses [that purportedly require litigation in another country] are properly brought pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue.").

8

*Id*. The Eleventh Circuit reasoned that "a defendant in a removed action is [not] left without options if it believes that the case can be better litigated and tried in another division or district [because] a defendant can seek a transfer under § 1404(a). Hollis 259 F.3d at 1300, *citing* Serrano v. United States Fire Ins. Co., 2000 WL 33348220, *1-*2 (W.D. Tex. Nov.7, 2000)("[T]he only proper way [for a removing defendant] to assert a challenge to venue, without flouting the venue provisions of 28 U.S.C. § 1441, is to do so pursuant to 28 U.S.C. § 1404(a)....");[3] Hartford Fire Ins. Co. v. Westinghouse Elec. Corp., 725 F.Supp. 317, 320 (S.D. Miss. 1989) ("[T]hough their removal precludes a challenge to venue as improper, defendants may still attack this venue as inconvenient."). The Eleventh Circuit also held that "[t]here may even be a basis for requesting a transfer pursuant to § 1406(a)." Hollis 259 F.3d at 1300, *citing* Aguacate Consolidated Mines, 566 F.2d at 524-25 (holding that removed action can be transferred pursuant to § 1406(a) if personal jurisdiction over defendant cannot be exercised in the

---

[3] The Serrano Court, which was cited with approval by the Eleventh Circuit in Hollis, explained that

> The general removal statute, 28 U.S.C. § 1441(a) provides that any action brought in a state court may be removed by the defendant to the district court "for the district and division embracing the place where such action is pending." Accordingly, venue in removed cases being defined by 28 U.S.C. § 1441, the general venue statute that applies to cases originally filed in federal court—28 U.S.C. § 1391—does not apply to removed cases. *See* Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665, 73 S.Ct. 900, 902, 97 L.Ed. 1331 (1953) ("But even on the question of venue, § 1391 has no application to this case because this is a removed action. The venue of removed actions is governed by 28 U.S.C. § 1441(a)...."). Hence, pursuant to 28 U.S.C. § 1441, the proper venue of a removed action is the "district court of the United States for the district and division embracing the place where such action is pending."

2000 WL 33348220 at *1.

district to which action is removed).   See also, Food Marketing Consultants, Inc. v. Sesame Workshop, 2010 WL 1571206, *4 (S.D. Fla., March 26, 2010)(denied motion to dismiss for lack of venue pursuant to Rule 12(b)(3) but granted alternative motion to transfer pursuant to 28 U.S.C. § 1404(a) because it held that the forum selection clause at issue was valid and enforceable).

In this case, Bunting has not sought, in the alternative, that the action be transferred to an appropriate federal court in Kansas. However, the mere fact that this defendant chose not to pursue such a transfer, does not alter the fact that dismissal is not appropriate in this case because, Bunting's removal of this action from the Baldwin County Circuit Court to this Court, namely a transfer to "the district court . . . for the district and division embracing the place where such action is pending," was proper under 28 U.S.C. § 1441(a).   See, Serrano, supra, 2000 WL 33348220 at * 1; Hartford , supra, 725 F.Supp. at 320 ("[T]hough their removal precludes a challenge to venue as improper, defendants may still attack this venue as inconvenient."); Hollis, 259 F.3d at 1300. Bunting's motion to dismiss should, therefore, be denied.

  B. The Validity of Bunting's Forum Selection Clause.

Bunting argues, in sum, that the forum selection clause at issue is unambiguous, valid and enforceable.   (Doc. 14 at 5).   Plaintiffs dispute, in sum, the validity of the forum selection clause on the grounds that it is not only ambiguous but was not properly incorporated by Bunting into the parties' agreement.   (Doc. 18 at 7-14).

"When parties dispute the validity of a forum selection clause, general contract

law governs." Bodywell Nutrition, LLC v. Fortress Systems, LLC, 2011 WL 31074, *2 (S.D. Fla. January 5, 2011), citing P & S Bus. Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir.2003).[4] Under Alabama law,[5] "[t]he requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." Ex parte Riverfront, LLC, 2013 WL 2367561, *4 (Ala., May 31, 2013), quoting Strength v. Alabama Dep't of Finance, Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala. 1993); Steiger v. Huntsville City Bd. of Ed., 653 So.2d 975, 978 (Ala.1995). It has also been held that "[a]ssent must be manifested by something. Ordinarily, it is manifested by a signature." Id., quoting Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105, 108 (Ala. 2000)(citing Commercial Credit Corp. v. Leggett, 744 So.2d 890, 895–96 (Ala. 1999); Premiere Chevrolet, Inc. v. Headrick, 748 So.2d 891, 893 (Ala. 1999); and Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615, 618 (Ala. 1997)).

The Alabama Supreme Court has declared that:

> " 'When an agreement includes *a clearly stated forum-selection clause*, a party claiming that clause is unreasonable and therefore invalid will be required to make a clear showing of unreasonableness. In determining whether such a clause is unreasonable, a court should consider these five

---

[4] If there is no dispute regarding the validity of the forum selection clause, federal law rather than Alabama law would govern the applicability and enforceability of the clause because "[v]enue is a matter of federal procedure." Stewart Organization, Inc. v. Ricoh Corp., 810 F.2d 1066, 1068 (11th Cir. 1987), citing 28 U.S.C. §§ 1391, et seq.

[5] The Court applies Alabama law because "a federal district court sitting in diversity must apply the choice of law rules of the forum state." Trumpet Vine Inv., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). No party has suggested looking to the laws of any other state other than Alabama to resolve issues related to general contract law.

>factors: (1) Are the parties business entities or businesspersons? (2) What is the subject matter of the contract? (3) Does the chosen forum have any inherent advantages? (4) Should the parties have been able to understand the agreement as it was written? (5) Have extraordinary facts arisen since the agreement was entered that would make the chosen forum seriously inconvenient? We state these items not as requirements, but merely as factors that, considered together, should in a particular case give a clear indication whether the chosen forum is reasonable.' "

Ex parte Nawas Intern. Travel Service, Inc., 68 So.3d 823, 827 (Ala., 2011), *quoting* Ex parte Rymer, 860 So.2d 339, 342–43 (Ala.2003) (*quoting* Ex parte Northern Capital Res. Corp., 751 So.2d 12, 15 (Ala.1999))(emphasis added). Consequently, the burden to establish that a forum selection clause is "seriously inconvenient" does not arise unless a forum selection clause is "***clearly stated***."

The only document in this case actually signed by Mr. Cunningham on behalf of the plaintiffs is the Credit Application wherein plaintiffs agreed to pay "all legal fees and collections cost should such action be required regarding this account with Bunting and venue to be within and according to Kansas law." (Doc. 14 at 13; Doc. 18-2 at 1). Although Bunting argues that the mere inclusion of the word "account" broadens this forum selection clause to include every imaginable legal claim plaintiff could assert , Bunting has presented no legal authority for such an interpretation.

Bunting also argues that the forum selection clause contained in its "Terms and Conditions of Sale," found only on its website, was sufficiently clear and sufficiently incorporated into its agreement with the plaintiff as to be binding on the plaintiff. Bunting specifically argues:

>In the case at hand, the applicable forum selection clause is mandatory in nature as

> it as it requires all matters to be litigated in the State of Kansas. (Ex. C-2). The Terms and Conditions provision which govern each of the transactions made the subject of this lawsuit also identifies the proper venue as being in the State of Kansas. (Ex. C-1). As Cunningham signed identical credit applications and received identical Terms and Conditions forms as a representative of each of the respective Plaintiffs, both Plaintiffs have agreed to submit to the exclusive venue in the State of Kansas.

Doc. 14 at 4. Bunting has not, however, established that this clause is either sufficiently clear as to demonstrate that it applies to the claims asserted by the plaintiffs in this lawsuit or that plaintiffs actually agreed that the forum selection clause would apply to such claims. Nor has Bunting established that Mr. Cunningham actually "received identical Terms and Condition Forms" because that fact has been disputed. *Cf.*, Doc. 14 at p. 10, ¶¶ 4, 6 and Doc. 18-1 at p. 3, ¶¶ 8, 13. The section entitled "Governing Law/Submission to Jurisdiction" of the "Terms and Conditions of Sale" set forth on Bunting's website does not advise the reader about the nature of what sort of matters must be brought in Kansas. Instead, it merely advises that "[a]ny contract arising out of the making and accepting of a Bunting offer or quote shall be deemed to have been made in the State of Kansas and shall be construed according to the laws of the State of Kansas." (Doc. 14 at pp. 16, 24). The next sentence of this section on Bunting's website provides that the parties "stipulate[] that any resultant agreement is ***substantially performable by the parties*** and that jurisdiction exists solely ***within the state of Kansas***." *Id*. (emphasis added). It is not clear what is meant by the phrase "jurisdiction exists solely" because there is no language in this section identifying the types of matters over which jurisdiction is sought to be imposed. Consequently, this case is distinguishable

13

from Stewart, *supra*, 810 F.2d at 1068, a case relied on by Bunting for the proposition that "[t]he Eleventh Circuit has given broad interpretation to forum selection clauses." (Doc. 14 at p. 5). In Stewart, the forum selection clause at issue provided that "the courts in New York City, the Borough of Manhattan, would have 'exclusive jurisdiction over ***any case or controversy*** arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy'." 810 F.2d at 1067 (emphasis added). The Eleventh Circuit held that this language, which appears nowhere on Bunting's website or in any document supplied by Bunting to the plaintiffs, was broad enough to include both contract and tort causes of action. *Id.* at 1070 ("[T]his forum selection clause is sufficiently broad to require the transfer of all claims to a New York court [because] it is clear from the language of the agreement that the forum selection clause encompassed ***any dispute*** arising out of or in connection with the dealer-manufacturer relationship.") (emphasis added). Bunting also relies of a subsequent opinion in the Stewart case for the proposition that the forum selection clause it contends is set forth on its website is enforceable because it was "freely and fairly negotiated by experienced business professionals." (Doc. 14 at p. 5, *quoting* In re Ricoh Corp., 870 F.2d 570, 573-74 (11th Cir. 1989). There is, however, no evidence that plaintiffs were even aware of the alleged forum selection clause or agreed to bring any "matter arising from or related to the contract" (doc. 14 at p. 5) solely to the State of Kansas.

      The credit application, the only document signed by Mr. Cunningham, says only

that "by completing ***this form*** the above referenced Buyer agrees to the terms & conditions as expressed in ***this form*** and ***future documents*** from Bunting Magnetics Co." (Doc. 14 at p. 3, ¶ 7, and pp. 13, 17)(emphasis added). In a separate sentence, the credit application states, "Complete terms and conditions may be found at www.buntingmagnetics.com." (Doc. 14 at pp. 13, 17). This sentence does not state that the terms and conditions are incorporated into the credit application form nor does it indicate that the buyer must agree to anything set forth on Bunting's website, including a forum selection clause.

Plaintiffs have sufficiently challenged the validity of Bunting's forum selection clause. Under applicable contract principles, the subject clause is simply unenforceable.

  C. <u>The Breach of Confidentialty Claim Precludes dismissal of this action</u>.

In Count Five of the Amended Complaint (doc. 8 at pp. 9-11, ¶¶ 44-51), plaintiffs assert a claim for breach of a Confidentiality Agreement which Bunting concedes that it entered into with the plaintiffs on January 14, 2011 (doc. 14 at p. 3, ¶ 10). Bunting acknowledges that this Confidentiality Agreement provides that it "shall be governed by, and construed in accordance with, the laws of the State of Alabama." (Doc. 14 at p. 3, ¶ 11). Bunting also acknowledges that the Confidentiality Agreement "does not include a forum selection clause." *Id*. Consequently, even if the Court held that Bunting's forum selection clause was valid, Bunting does not argue, nor could it, that its forum selection clause applies to the breach of confidentiality claims. This Court is, therefore, confronted with an issue regarding the appropriateness of splitting plaintiffs' causes of

action.

Under Alabama law, "courts have held that where a plaintiff's suit is truly broader than the forum selection clause and the structure of the complaint is not an attempt to avoid the forum selection clause, enforcement of the forum selection clause would be unreasonable." Ex parte Leasecomm Corp., 886 So.2d 58, 64 (Ala., 2003), *quoting* Pegasus Transp., Inc. v. Lynden Air Freight, Inc., 152 F.R.D. 574, 577 (N.D.Ill.1993) (forum-selection clause that purported to require the splitting and remand to state court of some of the plaintiff's claims was unreasonable and therefore unenforceable). There is no evidence in this record or contention that plaintiffs have structured their complaint in any attempt to avoid the forum selection clause asserted by Bunting.

In Borrero v. United Healthcare of New York, Inc., 610 F.3d 1296, 1307-10 (11th Cir. 2010), healthcare providers and representative organizations filed seven breach of contract actions in various state courts, alleging that the defendant health insurer failed to pay them the full contracted rate for services rendered to insureds. After removal, the Judicial Panel on Multidistrict Litigation transferred the cases to the Southern District of Florida, where they were stayed pending disposition of a similar action alleging a Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy among health insurers (the "MDL litigation"). Following entry of judgment in the MDL litigation, the United States District Court for the Southern District of Florida dismissed the transferred cases on basis of res judicata. Although the Eleventh Circuit ultimately concluded that the MDL litigation and the transferred cases did not involve the same cause of action

because of the distinction between the breach of contract claims and the RICO claims, the Court addressed the general rule against splitting causes of action in the context of an arbitration clause and held that "Appellants' uncertainty about whether United would move to compel arbitration did not relieve them of the obligation to assert all of their claims in the prior action." Borrero, 610 F.3d at 1307. The Eleventh Circuit held that:

> Most courts considering the issue have concluded that the arbitrability of a claim is not a jurisdictional limitation. *See, e.g.*, Gabbanelli Accordions & Imps., L.L.C. v. Gabbanelli, 575 F.3d 693, 695 (7th Cir.2009) (noting that an agreement to arbitrate "***no more deprives the court of jurisdiction than a defense based on any other contractual forum-selection clause would***"); Skirchak v. Dynamics Research Corp., 508 F.3d 49, 56 (1st Cir.2007) ("An agreement to arbitrate does not divest a court of its jurisdiction."). In Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., this court considered factual circumstances similar to those presented here and held contrary to the Appellants' position. 985 F.2d 1067 (11th Cir.1993), *abrogated on other grounds* by Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).
>
> In Kelly, the plaintiff declined to present state law claims to the federal court in the prior action because of the applicability of an arbitration agreement. We held that the plaintiff should have presented them despite the agreement, and that the agreement to arbitrate would not limit the applicability of claim preclusion. *Id*. at 1070. "Plaintiffs could have asserted the state claims before the district court, which would have had pendent or diversity jurisdiction over the claims. ***The uncertainty of whether defendant would move to compel arbitration of the state claims did not justify two proceedings***." *Id*.

Borrero, 610 F.2d at 1307 (emphasis added). Similarly, plaintiffs in this case are justified in joining its causes of action against Bunting, despite the alleged forum selection clause, because these claims involve the same "nucleus of operative facts." The Eleventh Circuit, in determining whether two cases comprise the same cause of action, declared that "the general analytical method in our cases involves not an explicit

17

transactional approach but an evaluation of any commonality in the 'nucleus of operative facts' of the actions." Borrero, 610 F.2d at 1308-09, *citing*, Adams v. S. Farm Bureau Life Ins. Co., 493 F.3d 1276, 1290 (11th Cir. 2007) (concluding that two actions encompassed the same "broad nucleus of fact"); In re Atlanta Retail, Inc., 456 F.3d 1277, 1288 (11th Cir. 2006)(reciting "nucleus of operative fact" standard); Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1270 (11th Cir. 2002) (same); Israel Discount Bank Ltd. v. Entin, 951 F.2d 311, 315 (11th Cir. 1992) ("In this analysis, a court should compare the factual issues explored in the first action with the factual issues to be resolved in the second action."). Consequently, the general rule against splitting causes of action should be applied in this action as an alternative basis to preclude Bunting's motion to dismiss.

CONCLUSION

For the reasons set forth above, it is the recommendation of the undersigned that Bunting's motion to dismiss be **denied**.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the

objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 5th day of November, 2013.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**